August 22.
JUDGE GREEN
delivered his opinion.
On the 27th June, 1821, Joshua Long took the oath of an insolvent debtor, and was discharged from the custody of the Sheriff of Spottsylvania. In his schedule were these expressions : “The above is every things,” &c. (See the expressions in the statement of the last case, ante, p. 736,) the schedule also contained the following clause: “Negroes Moses, George, Sam, Peter, Beverly, Clarke, Humphrey, Bill, Ben, and Fontaine, under a Deed of Trust to Major C. Jones.” Long was discharged by order of the Magistrates, without surrendering to the possession of the Sheriff, the personal estate mentioned in the schedule. The ^Sheriff made a public sale of all the property contained in the schedule, subject to all claims, charges, and incumbrances existing upon *900 the property, or any part thereof, and executed a Deed on the 8th November, 1821, to Thomas Shirley, he being- the highest bidder. (The purport of the Deed is fully set forth in the last case, ante, p. 737.) The property so purchased-by Shirley, was very large, but greatly incumbered ; in some instances, nay as to the far greater part, it was incumbered beyond its value, as it turned out. He purchased it for fifty odd dollars, but he states in his Bill, (and he proves) that he was a creditor of Long, to the amount of upwards of $700 ; that he had no lien on Long’s property, and that the object of purchasing was to endeavor to ■ secure his debt, if possible. In this he was perfectly justifiable, and if not, it is a circumstance that can have no effect upon the decision, as to his legal and equitable rights.
Joshua Long, on the Sth January, 1821, conveyed, amongst other property, in trust to indemnify a surety, two negroes, Lewis and Fanny, which were sold under the Deed of Trust, on the 6th August, 1821, and per-chased by Shirley, from the purchaser at the sale, on the 28th November, 1821. Lewis remained in Long’s possession until this suit was brought, and the Marshal took possession of him, under the order of the Court, made in this cause. Long sold Fanny, and two other slaves, to Thomas B. Adams, on the 11th May, 1821, for a house and lot, which Adams conveyed, at the request of Long, to his three children, Joanna, Mary and Benjamin, and Long told Adams, as the latter states in his Answer, that the reason for having the lot and house conveyed to those ■ children, was, “that he had always told his sou Benjamin, that Jim, (one of the negroes sold to Adams, and included in the Deed of Trust to C. Jones, in 1820, as was Beverly, another - of the ne-groes sold to Adams;) should be his property ; that he had made the promise to one of his daughters, of Fanny, as her property ; both son and daughter, *he said were satisfied with the sale of their negroes, provided they were each one third - interested in the house and lot; and Long said, that his other daughter had not received any thing of him she could call her own, and therefore requested that she-shouldbe named in the Deed as one third owner of the house and lot.”
Long being in possession of the land conveyed in trust for the benefit of G. Jones, and of many of the slaves embraced in that Deed, the equity of redemption of which was sold by the Sheriff to Shirley, and of the negro Bill, (who was mentioned in the schedule as being included in the Deed to C. Jones, but was.not,) and Ralph ; and the -legal title to a part of the land conveyed to C. Jones, being in Garret Minor, this Bill was filed against Joshua Long, Elizabeth, Durret, William and Joanna Long, (the four last being the children to whom Long stated he had conveyed eight slaves,) Mary S. and Benjamin Long, Elijah D. Robins, the trustee in the Deed under which Fanny and Lewis were sold, Thomas B. Adams, Garret Minor, C. Jones, and Robert Patton, the trustee in the Deed for the benefit of said C. Jones.
The objects of the Bill were, to procure a conveyance from G. Minor to Patton, the Trustee of Jones; to have the sum due to Jones, ascertained, the property pledged for the debt to Jones, sold, and the debt paid, and the surplus, if any, paid to him ; and in order to relieve this fund, to compel Adams to pay to Jones, the value of Jim and Beverly, two of the negroes pledged by that Deed, and afterwards sold by Long to Adams, and sold by him; to subject Adams to the payment to him of the value of Fanny, sold by Long to Adams, after the Deed of Trust to Robins, under which Shirley claimed: and to charge the value of the three negroes sold to Adams, on the house and lot conveyed to Long’s children, claiming to charge Adams individually, only in the event of the house and lot being insufficient to pay : for a discovery of the names of eight slaves, said to be conveyed to the four elder children *and to set aside the conveyances as fraudulent, so that any of them embraced in the Deed to Patton, might be applied to the payment of Jones’s claim : to ascertain, also, whether Fanny and Lewis, sold under Robin’s lien, and Bill and Ralph, remaining in Joshua Long’s possession, were claimed as conveyed to his children, and if so, to declare Shirley entitled to Ralph, as conveyed to him by the Deed from the Sheriff, as one of the eight slaves mentioned in the schedule, and to Decree that Bill should be delivered to him, as being named in the schedule as one conveyed to Patton, when he was not, upon the ground that the conveyances to the children of Long, if they embraced those slaves, were void, and should be set aside in Equity, for fraud : and to procure an Injunction against Joshua Long, to prevent his committing waste, and; against all the parties, in possession of any of the slaves claimed from eloigning them. '
As to the property conveyed to Patton, there remains nothing to do, since it is admitted that it was insufficient, under any circumstances, to pay Jones’s claim. The claim to the value of Fanny against Adams, or of the house and lot,) upon which the Court below has- not decided ;) the claim to Nelly and Dice, not particularly mentioned in the Bill, but which are the negroes claimed by Elizabeth Long in her Answer; the claim to Billy- and Ralph, which have not yet been claimed by any oE the Children ; and the claim to- ' Lewis, who is claimed by- William Long, as-oné of the slaves conveyed by his father to him, are the only subjects remaining to be decided in the'cause:
The Court of Chancery, upon the motion of Elizabeth and .William Long, who answered, Joshua Long and his other- children not having answered, and against whom there was a Decree Nisi, dissolved the Injunction in toto, as to all the parties, upon the ground that Shirley, claiming only under the Deed from the Sheriff; had no title, 'since he ob-. tained no title b:-:t such as Long himself could have maintained, and that Long himself had by his schedule ^'disclaimed all title to the eight slaves conveyed to-his children, and therefore, the Plaintiff, as purchaser of Long’s interest, had no title to them.
The Sheriff’s Deed conveys all his-interest in the property before described as sold,.both at Law and in Equity, vested in ' him by the Act of Assembly. In the Common Law *901 case, between the Plaintiff and Joshua Long-, the question as to the effect of this Deed has been examined, and it has been declared, that the eight slaves mentioned in the schedule as conveyed to the four children, were intended to be sold and conveyed by the Sheriff, if any title vested in him by operation of Law, and that his Deed would pass to the purchaser the title of such as were so conveyed to the children when that fact was ascertained, if the conveyance was void as against creditors under our Statute of Erauds.
As to the slave Bill, mentioned in that part of the schedule relating to the slaves conveyed to Patton in trust for Jones, he is expressly conveyed by the Sheriff, subject to all incumbrances. None of the children claim him, and if none should claim him, or if claiming him, the title, under which the claim is made, is found to be fraudulent and void,Shirley will clearly be entitled to that •slave, he being in the schedule as property belonging to Long, and giving up expressly, and by name.
As to Ralph, if he should be ascertained to be one of those conveyed to the four children, or either of them, and the conveyance be fraudulent and void, Shirley will also be entitled to him, the Sheriff having in that case the legal title, and having conveyed it to Shirley. But, if the slave was not conveyed to the children, or either of them, Ralph still belongs to the Sheriff; or, if he has been so conveyed, and the conveyance be bona fide, and valid, he will belong to the donee.
As to the slave Eanuy, claimed by Shirley, under the Deed of Trust for the benefit of Robins, she is claimed by none of the children ; and if she shall not be claimed, or if ^claimed, the claim should be fraudulent and void, Shirley will be entitled to her against Adams, clearly, as he claims under a Deed duly recorded before the sale to Adams.
As to Milley and Dicey, claimed by Elizabeth Long, by virtue of a Deed from her father, Shirley would be entitled to them, if that Deed be fraudulent and void. In respect to the slave Lewis, claimed by Shirley under the Deed of Trust to Robins, he has an unquestionable title, unless the Deed from Joshua Long to William Long for this slave, (and Humphrey, who was conveyed to Patton,) was bona fide and valid, so as to have the preference to the Deed of Trust to Robins.
As to the negroes claimed by Elizabeth and William Long, the conveyances and transfers under which they claim, are clearly void under our Statute. They state that two negroes were given to each of them, respectively, by their father, when they were incapable of knowing the fact, and that afterwards they were conveyed by Deed ; and William Long states that Carter, one of those so conveyed to him, was sold by Joshua Long, who substituted Lewis in his place, and gave him a new conveyance about 1816 or 1818, for Humphrey and Lewis. They both admit that the slaves were always in the possession and under the control of their father ; but, they rely that being infants, and living with their father, his possession was theirs or for them as the guardian, and that the negroes were always called theirs in the family and neighborhood. Much evidence is exhibited upon these subjects, and some attempts made to prove an actual possession in these children. But, if the proof went to that point, it would be entitled to no weight, since it would not be competent to the parties to disprove the admissions of the Defendants in their pleadings. The suggestion that the children being infants, and living with their father, his possession was theirs, or for them, is utterly futile, and if countenanced, would frustrate our Acts of Assembly ; one, of which, in order to the validity of a parol gift of a slave, ^requires that the slave shall have come into the actual possession of, and remained with, the donee ; and the other requires, in the case of a gift by Deed, that the Deed shall be recorded, or the possession really, and bona fide remain with the donee. These emphatic words of the Statutes were used for the purpose of condemning the very gifts in question, and such as these. Besides, Joshua Long treated these slaves as his own and gave Jones a Deed of Trust on one of them, Humphrey, and a Deed of Trust to Robins for another, Lewis. The original gifts of these slaves were void as between the parties, under the General Law declaring parol gifts to be void, without possession in the donee; and as to the subsequent conveyances by Deed, they were void as to creditors and purchasers, under the Statute of Erauds, they being conveyed without any valuable consideration, and the donees never having had a bona fide possession, and the Deeds not being recorded. Shirley is, therefore, entitled to Lewis; and the order dissolving the Injunction, is erroneous in toto.
As to the objection taken to the Bill as being multifarious, it is premature to decide what effect, that objection, if well founded, should have at the final hearing of the cause. It ought to have had no influence upon considering a motion to dissolve the Injunction.
JUDGE CARR.
The Plaintiff filed a Bill against Long, his children, and several others. This Bill has various objects in view; among others, to discover from the four children, which of the slaves they claim, that the Deeds of Conveyance may be declared fraudulent, and the slaves decreed to the Plaintiff. Elizabeth, and William Long, are the only children of Long who have answered. She claims two slaves, Nelly and Dice; he two, Humphrey and Lewis. They both state that these slaves were given in their early infancy by parol, and afterwards, the gift confirmed in 1810, *by writing; that the slaves always remained with their father, but that this ought not to impeach these gifts, as they were infants, and their father their natural Guardian, with whom they lived. William states, that his father, wishing to sell Carter, (the slave first given to him with Humphrey,) proposed to give him Lewis, and one hundred and ten acres of land in exchange, to which he agreed, and Carter was sold, and a Bill of Sale made to him for Humphrey and Lewis; that this transaction was in 1816, or 1818; that the *902 Bill of sale was made soon after the contract, and the Deed for the land in 1820. The Bill had prayed an Injunction to restrain the removálof the slaves, and unless security were given to have them forthcoming, they should be taken into possession by the Marshal. This was granted, and the Marshal under the order took possession of several of them. After the Answers of William and Elizabeth were filed, a motion was submitted by them for a dissolution of the Injunction, and it was accordingly dissolved. This dissolution was, I presume, intended to affect the interests of Elizabeth and William only, or at most the eight negroes claimed under the Deed of the Sheriff, and mentioned in Long’s schedule as given to his children. The various other subjects and interests involved in the Bill, I do not consider as affected by it. This ideáis founded on the order of the Chancellor, stating “that the Court is of opinion that the Plaintiff, by virtue of his purchase of the effects of Long, as contained in the schedule, obtained such title only as Long himself could maintain, and the said Long by his schedule disclaiming any title to the eight slaves therein mentioned, the Plaintiff, as purchaser of Long’s interest, has no right to the said slaves, &o., doth order that the Injunction be dissolved, &c.” The remarks made in the action of detinue, show that on this point, I differ from the Chancellor toto coelo. The reasons of that difference need not be repeated.
Still I have felt considerable doubt whether this Interlocutory Order ought to be reversed. I have a pretty strong . *impression that the Bill is not sus- . tainable; it strikes me as being multifarious, and also that so far as relates to these negroes, a Court of Law is the proper forum. I consider the pretext, that the Plaintiff did not know their names, merely colourable. There could hardly be a necessity on this point, of a discovery from the claimants. The other seven stood on the same ground with Sarah, for whom the action of detinue is brought, and as I think, properly brought. I feel more doubtful whether these objections should be taken to the Bill in this stage of the proceedings, as there has been no demurrer, or plea. On this point, I will not divide with my brethren, if they should think such objections can only be taken by the Court at the final hearing.
JUDGE CABELL, as in the former case, dissented from so much of the opinions of the other Judges, as gives any efficacy whatever to a Sheriff’s sale and conveyance of the property of an insolvent debtor, when that property was not in i-he possession of the Sheriff, and had not been claimed by him, “by legal process,’’ against those who were in possession thereof.
The objection to the Bill as being multifarious, he thought was premature.
The Decree of the Chancery Court was reversed, and the cause remanded for further proceedings.